**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MATHIAS ETENGENENG AGBOR,

*Petitioner*,

v. No. 2:26-cv-00530-SMD-JMR

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,

*Respondents*.

**AMENDED ORDER REQUIRING SUPPLEMENTAL EVIDENCE REGARDING REMOVAL**

THIS MATTER comes before the Court following Respondents' November 6, 2026 supplemental filings (Docs. 27, 28) and Petitioner's November 18, 2026 supplemental brief (Doc. 30), submitted following the Court's October 28, 2026 Order (Doc. 23). Having reviewed those filings, the record, and the evidence presented at the October 27, 2026 hearing, the Court concludes that further evidence is necessary to determine the status of Respondents' proposed removal of Petitioner to Cameroon and its implications for his continued detention.

**BACKGROUND**

Petitioner Mathias Etengeneng Agbor is a citizen of Cameroon who entered the United States in February 2025 and has remained in immigration custody since his apprehension, approximately twenty-one months. Respondents contend that his removal order became final in January 2026. The Court does not resolve the commencement of the statutory removal period in this Order.

Petitioner sought protection after allegedly suffering persecution arising from his humanitarian work in Cameroon. His filings include declarations describing threats against him and his family, violence against relatives, and the destruction of his property. *See* Case No. 2:26-cv-00563, Doc. 1 at 45–46, 56. He also submitted a purported wanted notice and medical records documenting injuries he attributes to physical abuse in Cameroon. *Id.* at 64, 67–70. Petitioner previously received a positive credible-fear determination concerning Cameroon.

On November 20, 2025, an Immigration Judge granted Petitioner voluntary departure to Brazil. The order references Cameroon as a potential country of removal, although Petitioner disputes whether that provision applies if Brazil declines to admit him. *See* Case No. 2:26-cv-00563, Doc. 19 at 7–9; Doc. 30 at 17–18, 21–22. Petitioner independently arranged transportation to Brazil for December 9, 2025. Immigration and Customs Enforcement ("ICE"), however, prevented that departure because the itinerary included an unescorted domestic connection in Houston. Doc. 28 at 7.

Respondents subsequently attributed difficulties arranging travel to Brazil to issues involving Petitioner's visa or refugee documentation. Petitioner maintains that the Brazilian visa in his passport remained valid until July 29, 2026, although a separate refugee document expired on December 26, 2025. Doc. 30 at 4–5; *see also* Case No. 2:26-cv-00563, Doc. 19 at 18–19. The record does not contain the underlying communications necessary to determine whether Brazilian authorities would have refused Petitioner's admission on December 9, 2025.

On March 23, 2026, ICE arranged Petitioner's unescorted departure to Nigeria through Atlanta, with a domestic connection of approximately five hours. Doc. 28-2 ¶ 5; Doc. 28-4 at 1. ICE coordinated a meet-and-greet with U.S. Customs and Border Protection ("CBP") in Atlanta.

Doc. 30 at 9–10. The coordination request incorrectly identified Petitioner as Nigerian, although ICE maintains that he was to travel on his Cameroonian passport. Doc. 28-2 ¶ 6; Doc. 30 at 10.

Petitioner testified that he was asked to sign documents misidentifying his nationality. Pedro J. Perez, Sr., a Supervisory Detention and Deportation Officer with ICE, stated that, to his knowledge, Petitioner was not asked to sign any documents. Doc. 28-2 ¶ 7. However, his declaration recounts information obtained from another officer concerning the attempted departure. *Id.* ¶ 5.

The Court does not resolve these factual disputes. Nevertheless, ICE's prevention of the independently arranged Brazil departure, its subsequent arrangement of an unescorted Nigeria itinerary with CBP coordination, and the admitted nationality error warrant a documented explanation. On the present record, the Court cannot determine whether differences in the transfer arrangements or Petitioner's conduct contributed to the unsuccessful departures.

Following the October 27 hearing, the Court denied Respondents' emergency motion without prejudice and required supplemental briefing. Doc. 23. Petitioner's November 18 submission challenges his continued detention and requests protection against removal without an opportunity to raise fear-based claims. Doc. 30 at 1–3. The Court does not adjudicate that requested protection or review the validity of his removal order in this interim Order.

The Government now proposes to remove Petitioner to Cameroon, where he alleges that he previously suffered persecution and fears returning. Petitioner's positive credible-fear determination does not establish entitlement to protection from removal. The seriousness nevertheless underscores the importance of accurate representations concerning the Government's removal arrangements.

## LEGAL ANALYSIS

The Court's inquiry concerns the lawfulness of Petitioner's detention, not the validity of his removal order. *See* 28 U.S.C. § 2241; 8 U.S.C. § 1252(a)(5), (g); *Abedi v. Carter*, No. 25-3179, slip op. at 33–34 (10th Cir. Oct. 21, 2026). Under § 1231(a)(6), post-removal-period detention is limited to the period reasonably necessary to effectuate removal. *Zadvydas v. Davis*, 533 U.S. 678, 689, 699–701 (2001). After the presumptively reasonable six-month period, a petitioner who provides good reason to believe that removal is not significantly likely in the reasonably foreseeable future may require the Government to rebut that showing with sufficient evidence. *Id*. at 701.

The Tenth Circuit recently clarified that the *Zadvydas* presumption applies only during the initial six months after the statutory removal period is triggered. *Abedi*, slip op. at 63–69. Thereafter, detention is no longer presumed reasonable, and the Court must conduct a case-specific assessment of whether continued detention remains reasonably necessary to secure removal. *Id.* at 68–69. The expiration of six months does not, by itself, establish entitlement to release. *Id.*

The Court need not determine at this stage when Petitioner's statutory removal period commenced under § 1231(a)(1)(B) or whether it was extended under § 1231(a)(1)(C). Those questions may affect the ultimate lawfulness of his detention. They do not, however, eliminate the need for a reliable record concerning the Government's present ability to effectuate removal. The Court reserves those questions pending further factual development.

The dispute concerning the causes of Petitioner's unsuccessful departures bears on § 1231(a)(1)(C), which permits extension of the removal period when a noncitizen acts to prevent removal. The present record does not establish whether Petitioner prevented either departure or whether the unsuccessful arrangements instead reflected operational or documentation problems.

More immediately, Respondents represent that arrangements have been made to remove Petitioner to Cameroon. Doc. 28 at 9. Their submissions, however, do not identify a currently confirmed departure or adequately establish the current status of those arrangements.

That distinction matters. The inquiry under *Zadvydas* is not merely whether removal remains legally authorized or theoretically possible, but whether it is significantly likely in the reasonably foreseeable future. 533 U.S. at 701. A final removal order authorizes the Government to pursue removal; it does not, standing alone, establish that continued detention is justified indefinitely. Conversely, the absence of a confirmed flight does not, by itself, establish that removal is not reasonably foreseeable. The determination requires evidence of the arrangements actually in place, the obstacles that remain, and the time reasonably necessary to overcome them.

The Court also recognizes that its existing restriction may affect Respondents' ability to finalize or execute removal arrangements. Respondents cannot be faulted for complying with that restriction, and the Court will not require them to demonstrate that removal can occur while it remains in effect. The relevant questions include what arrangements have already been completed, what remains contingent upon modification of the restriction, and whether other practical obstacles would prevent removal if the restriction were lifted. The present record does not adequately answer those questions.

Respondents' supplemental briefing does not constitute a renewed motion to modify the existing restriction. Any request to modify or lift that restriction must be presented by separate motion, supported by relevant evidence and legal authority. The Court does not adjudicate such a request here.

The Court expects accuracy, diligence, and candor from the United States. Given Petitioner's prolonged detention and the consequences of an erroneous removal, Respondents must

provide a complete and reliable account of their efforts, including material facts unfavorable to their position. The Court expects better

## CONCLUSION

Accordingly, it is hereby **ORDERED** that Respondents **SHALL,** no later than 5:00 p.m. Mountain Standard Time on November 25, 2026, file a supplemental status report supported by a sworn declaration from an ICE official with personal knowledge of Petitioner's current removal arrangements. Respondents **SHALL**:

1. Identify whether a flight to Cameroon is currently booked or confirmed, including the departure date, itinerary, and supporting documentation. If none is confirmed, they must state so expressly;

2. Identify which travel documents, receiving-country authorizations, and other necessary arrangements have been obtained, which remain outstanding, and whether any previously obtained documents or authorizations remain valid. Confirm that the current travel documents correctly identify Petitioner's nationality;

3. Identify any remaining obstacles to removal, the steps being taken to resolve them, and the anticipated timetable supported by specific facts;

4. Provide documentary support for these representations, distinguishing confirmed arrangements from anticipated arrangements and identifying the declarant's basis of knowledge.

Respondents may seek leave to submit sensitive operational information under seal in accordance with the applicable rules.

**IT IS FURTHER ORDERED** that any request to modify or lift the Court's existing restriction **SHALL** be made by separate motion supported by the relevant evidence and legal authority. The Court will not construe Respondents' supplemental briefing as such a motion.

**IT IS FURTHER ORDERED** that the restrictions imposed by the Court's April 17, 2026 Order (Doc. 8) remain in effect pending further order of the Court.

The Court reserves determination of Petitioner's habeas claims.

**IT IS SO ORDERED.**

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**